**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **STEVEN GALANIS, individually and on behalf of all others similarly situated,** | ) ) ) ) | **FIRST AMENDED CLASS ACTION COMPLAINT** |
| | ) | **JURY DEMANDED** |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **Case No. 2016-cv-04705** |
| **STARBUCKS CORPORATION,** | ) ) | **Honorable Thomas M. Durkin** |
| **Defendant.** | ) ) ) | **Magistrate Judge Young B. Kim** |

Plaintiff Steven Galanis ("Plaintiff"), on behalf of himself and all others similarly situated, brings this class action case against Defendant Starbucks Corporation ("Starbucks" or "Defendant"), and alleges the following:

<u>**INTRODUCTION**</u>

1.     Starbucks is the largest coffee retailer in the world, with more than 23,000 stores in over 60 countries and with over 13,000 stores in the United States. In its retail stores, Starbucks sells, among other things, coffee, tea, specialty drinks, and food. Among these menu items are iced coffee, iced tea, and iced blended specialty drinks crafted by Starbucks employees. These cold or iced drinks (referred to collectively by Starbucks and hereinafter as "Cold Drinks") are the subject of this lawsuit.[1] Starbucks employees who prepare these Cold Drinks include baristas, shift supervisors, assistant managers, and managers.

---

[1] This lawsuit is not about bottled Starbucks drinks, but rather the Cold Drinks prepared by hand by Starbucks employees in its retail stores.

2.     Starbucks sells millions of Cold Drinks every year, accounting for billions of dollars in revenue. In 2015, Starbucks took in approximately $19.2 billion in total revenue.

3.     Since its founding in 1971, Starbucks has been at the forefront of the specialty coffee market. Originally a retailer of coffee beans and coffee-making equipment, over the years, Starbucks has helped introduce increasingly more expensive drinks to the American public, including the Cold Drinks at issue in this case. Over time, Starbucks customers have experienced rapidly rising prices, while in the process, Starbuck has bought out and taken over numerous smaller competitors.

4.     On its menu, Starbucks advertises all of its drinks, including its Cold Drinks, by fluid ounce. As detailed herein, a Starbucks customer who orders and pays for a Cold Drink receives much less than advertised—often nearly half as many fluid ounces.

5.     This is a class action lawsuit against Starbucks for misrepresenting its Cold Drinks as having more fluid ounces of the ordered Cold Drink than it actually delivers—and charges—the customer for.

6.     Plaintiff alleges that during the Class Period,[2] Starbucks has engaged in the practice of misrepresenting the amount of Cold Drink a customer will receive. As a result of this practice, Starbucks' Cold Drinks contain significantly less product than advertised, by design and corporate practice and procedure.

7.     But for Starbucks' misrepresentations, Plaintiff and similarly similarly situated purchasers of Cold Drinks would not have purchased or paid the price they did for the Cold Drinks.

---

[2] The term "Class Period" as used herein shall mean between April 27, 2006 and the present.

8. Plaintiff is among the millions of consumers who purchased one or more of the Cold Drinks during the ten years preceding the filing of this Complaint. Plaintiff and other similarly situated purchasers of the Cold Drinks relied on Starbucks' misrepresentations in purchasing Cold Drinks, and would not have paid as much if anything, for the Cold Drinks had the true facts regarding the true amount of fluid ounces they were getting been disclosed.

9. Plaintiff brings this class action on behalf of himself and all similarly situated consumers in the United States who purchased Starbucks' Cold Drinks during the Class Period for personal use (the "Class").[3] Plaintiff seeks damages, restitution, and injunctive relief for the Class for Starbucks' false and misleading marketing and sale of Cold Drinks. Plaintiff and the Class seek reasonable attorneys' fees as this lawsuit seeks enforcement of an important right affecting the public interest and satisfies the statutory requirements for an award of attorneys' fees.

## THE PARTIES

### Plaintiff:

10. Plaintiff Steven Galanis is a citizen of Illinois, who resides in Chicago, Illinois. During the Class Period, Plaintiff regularly visited Starbucks locations in Illinois and purchased Starbucks Cold Drinks from Starbucks retail stores.

11. In purchasing Cold Drinks from Starbucks retail stores, Plaintiff relied on Starbucks' misrepresentations of material fact regarding the true amount of fluid ounces contained in the Cold Drinks. Plaintiff would not have paid as much, if anything for the Cold Drinks had he known that it contained less, and in many cases, nearly half as many, fluid ounces

---

[3] The complete definition of the "Class" is set forth in paragraph 47 herein.

than claimed by Starbucks. As a result, Plaintiff suffered injury in fact and lost money or property.

**Defendant:**

12.     Starbucks Corporation is a Washington corporation with its principal place of business in Washington. Starbucks is headquartered at 2401 Utah Avenue South, Seattle, Washington 98134. Starbucks owns and operates retail stores in the United States and abroad, and is responsible for the manufacture, distribution, and marketing of its Cold Drinks throughout the United States and abroad.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, and Plaintiff(s), together with most members of the proposed Class are citizens of states different from Defendant. Additionally, this Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

14.     This Court is the proper venue for this action pursuant to 28 U.S.C. § 1391 because a substantial part of the events, acts, and omissions giving rise to the claims herein occurred in this District. Plaintiff Steven Galanis resides in this District and purchased a Cold Drink from Defendant in this District. Additionally, Starbucks advertised, sold, and distributed its Cold Drinks, which are the subject matter of this lawsuit, in this District.

## FACTUAL ALLEGATIONS

15.    During fiscal 2015, Starbucks generated over $19.2 billion in net revenue, a 16.5% increase from fiscal year 2014[4] Beverage sales accounted for 73% of Starbucks' net revenue in company-operated stores last year.[5]

16.    Sales of Cold Drinks account for a substantial amount of this revenue, and have become increasingly popular in recent years. In fiscal 2014, shaken iced tea Cold Drinks were the most profitable menu addition of the year.[6]

17.    The Cold Drinks involved in this lawsuit are those which are handcrafted by Starbucks employees in Starbucks retail stores and served with ice - including, but not limited to, iced coffee, shaken iced tea, shaken iced tea lemonade, Refreshers™, and Fizzio™ handcrafted sodas.

18.    On its menu, Starbucks advertises all of its drinks, including its Cold Drinks, by fluid ounce. This menu was plainly visible to Plaintiff and the Class during the Class Period. For example, as detailed in the menu below, which is available on Starbucks' website,[7] customers are told that if they order a Tall Cold Drink, they will receive 12 fluid ounces of that drink; in a Grande Cold Drink, they will receive 16 fluid ounces of that drink; in a Venti Cold Drink, they will receive 24 fluid ounces of that drink; and in a Trenta Cold Drink, they will receive 30 fluid ounces of that drink.

---

[4] Starbucks Corporation 2015 Annual Report.
[5] *Id.*
[6] Forbes, *Starbucks' Top-line Growth in FY2014 Driven By Higher Pricing & Accelerated Expansion In New Beverage Segments, available at* http://www.forbes.com/sites/greatspeculations/2014/10/31/starbucks-top-line-growth-in-fy2014-driven-by-higher-pricing-accelerated-expansion-in-new-beverage-segments/
[7] Last visited April 27, 2016.



customerservice.starbucks.com

 

# Customer Service

## What are the sizes of Starbucks drinks?
Published 01/21/2015 10:06 AM | Updated 09/04/2015 06:03 PM

The drink sizes we offer are Short, Tall, Grande, Venti® and Trenta®.

| | |
|---|---|
| Short | 8 fl. oz. |
| Tall | 12 fl. oz. |
| Grande | 16 fl. oz. |
| Venti® Hot | 20 fl. oz. |
| Venti® Cold | 24 fl. oz. |
| Trenta® Cold* | 30 fl. oz. |

*Only available for Shaken iced tea, Shaken iced tea lemonade, Iced coffee and Starbucks Refreshers® beverages.

19. Similar representations are made in Starbucks' in-store menu:

| Espresso & Coffee | tall 12 fl oz | cal | grande 16 fl oz | cal | venti 20/24 fl oz | cal |
|---|---|---|---|---|---|---|
| Smoked Butterscotch Latte | 4.25 | 270 | 4.95 | 350 | 5.25 | 450 |
| Latte Macchiato | 3.75 | 170 | | | | |
| Flat White | 3.75 | 170 | | | | |
| Cappuccino | 3.15 | 90 | 3.75 | 120 | 4.15 | 150 |
| Caffè Latte | 3.15 | 150 | 3.75 | 190 | 4.15 | 240 |
| Caramel Macchiato | 3.75 | 180 | 4.45 | 240 | 4.75 | 300 |
| White Chocolate Mocha | 3.75 | 370 | 4.45 | 470 | 4.75 | 580 |
| Caffè Mocha | 3.65 | 290 | 4.25 | 360 | 4.65 | 450 |
| Freshly Brewed Coffee | 1.85 | 5 | 2.10 | 5 | 2.45 | 5 |
| Iced Coffee Vanilla or Caramel | 2.25 | 60 | 2.65 | 90 | 2.95 | 130 |
| Cold Brew Limited Daily Availability | 2.75 | 0 | 3.25 | 5 | 3.65 | 5 |
| | | | | | | |
| Frappuccino® Blended Beverages | | | | | | |
| Smoked Butterscotch | 4.25 | 300 | 4.95 | 440 | 5.25 | 530 |
| Caramel | 3.95 | 300 | 4.65 | 410 | 4.95 | 510 |
| Mocha | 3.95 | 290 | 4.65 | 410 | 4.95 | 520 |
| | | | | | | |
| Teavana® Tea & Starbucks Refreshers® Iced Beverages | | | | | | |
| Peach Green Tea Lemonade | 2.95 | 100 | 3.45 | 130 | 3.95 | 190 |
| Strawberry Açaí (contains caffeine) | 2.95 | 80 | 3.45 | 90 | 3.95 | 130 |

Customizations: Espresso Shot +80¢ +5 cal   Venti Iced up to +30¢
Substitutions: Sumatra Coconut Milk or Organic Soymilk +60¢

2,000 calories a day is used for general nutrition advice, but calorie needs vary.

| tall 12 fl oz | cal | grande 16 fl oz | cal | venti 20/24 fl oz | |
|---|---|---|---|---|---|
| | | **Sorry, we're all out.** | | | |
| 3.75 | *170* | | | | |
| 3.75 | *170* | | | | |
| 3.15 | *90* | 3.75 | *120* | 4.15 | *1* |
| 3.15 | *150* | 3.75 | *190* | 4.15 | *2* |
| 3.75 | *180* | 4.45 | *240* | 4.75 | *3* |
| 3.75 | *370* | 4.45 | *470* | 4.75 | *5* |
| 3.65 | *290* | 4.25 | *360* | 4.65 | *4* |

20. This in-store menu was plainly visible to Plaintiff and the Class during the Class Period.

21. The picture below represents a Starbucks Venti Cold Drink cup. This cup is used for the Cold Drinks listed in paragraph 1 above. As demonstrated by this picture, the cup is labeled with 3 black lines.



22.     Starbucks' drinks are created according to a standard designed practice. For Cold Drinks, the standard practice is to fill the cup to the top black line with the Cold Drink liquid. Large pieces of ice are then added to the top of the cup. For example, if a customer orders a Venti iced coffee or shaken iced tea Cold Drink, the Starbucks employee will pour iced coffee or tea into the cup up to the top black line, as represented by this picture:



23.     After pouring the Cold Drink in the cup, the Starbucks employee will add large pieces of ice to the top of the cup. Starbucks employees fill Cold Drink cups with ice using pre-measured plastic scoopers, which escalate in size depending on the size of the drink. For

example, a Starbucks employee uses a larger scooper to add ice to a Venti drink than they would to add ice to a Grande drink.

24.     Starbucks includes these 3 black lines on its Cold Drink cups to ensure that its employees fill these cups with less fluid ounces than are advertised on Starbucks' menu for a given Cold Drink. In fact, Starbucks instructs its employees to provide its customers with fewer fluid ounces than advertised.

25.     As demonstrated above, the amount of the Cold Drink as poured pursuant to Starbucks' standard practice is far less than the amount it would take to fill up the Venti Cold Drink cup.

26.     The top black line on the Starbucks Venti Cold Drink cup typically represents approximately 14 fluid ounces, as demonstrated below. Put another way, when a Starbucks employee fills a Venti Cold Drink cup to the top black line, they are only pouring about 14 fluid ounces of Cold Drink into the cup, *not* 24 fluid ounces.

[space intentionally left blank]



27.     The 3 black lines that Starbucks uses on its cups ensure that only about 14 ounces will be poured into a Venti Cold Drink cup by a Starbucks employee using the standard practice.

28.     Accordingly, a Starbucks customer who orders a Venti Cold Drink receives only 14 fluid ounces of that drink – just over *half* the advertised amount, and just over *half* the amount for which they are paying. In the iced coffee example, a Starbucks customer who orders and pays for a Venti iced coffee, expecting to receive 24 fluid ounces of iced coffee based on Starbucks' advertisement and marketing, will instead receive only about 14 fluid ounces of iced coffee.

29.     Further, a Starbucks customer who orders and pays for a Venti iced coffee will actually receive fewer fluid ounces of Cold Drink in that Venti than what is advertised by Starbucks for a Grande Cold Drink.

30.     Similarly, the amount of Cold Drink liquid that a Starbucks customer receives in an iced tea Cold Drink is less than advertised and contains a significant amount of large ice

pieces. The picture below demonstrates that a customer ordering and paying for a Grande Shaken Iced Peach Green Tea Lemonade Cold Drink actually receives approximately 12 fluid ounces of that drink—*not* 16 fluid ounces as advertised:



31.    As demonstrated by the picture below, once the liquid is removed from that Grande Shaken Iced Peach Green Tea Lemonade Cold Drink, a significant amount of large ice pieces remains:



32.     The average Starbucks Venti Iced Coffee costs $2.95, as advertised, for 24 fluid ounces. The average Starbucks Venti Shaken Iced Tea costs $2.65. Starbucks' other Cold Drinks are even more expensive:  the average Venti Starbucks Refresher costs $3.95, the average Venti Shaken Iced Peach Green Tea Lemonade costs $3.75 and the average Venti Shaken Black Tea Lemonade costs $3.45.

33.     Similarly, Starbucks charges more for its Cold Drinks than it does for hot drinks. For example, as depicted in the menu above, a Grande Iced Coffee—which is advertised as containing 16 fluid ounces—and which contains much less—costs $2.65, while a Grande Freshly Brewed (Hot) Coffee costs $2.10. Essentially, Starbucks is not only underfilling its Cold Drinks compared to how they are advertised, but it is charging a premium price for them as well.

34.     Ice is not a "fluid." Water expands when frozen. Thus, when it melts, less ounces will remain. The smaller the pieces of ice, the more "accurate" the conversion of ounces—from frozen liquid—will be. However, large pieces of ice—like those used by Starbucks in its Cold Drinks—take up more space and thus when melted, will yield fewer measured "fluid" ounces of coffee or tea, for example. *See, e.g. "Freezing and Melting,"* <u>World of Earth Science</u> 2003*, available at* <u>*http://www.encyclopedia.com/doc/1G2-3437800231.html.*</u>

35.     In essence, Starbucks is advertising the size of its Cold Drink cups on its menu, rather than the amount of fluid a customer will receive when they purchase a Cold Drink – and deceiving its customers in the process.

36.     The Cold Drinks at issue in this case are beverages. The word "beverage" is defined as "a drinkable liquid." *See* http://www.merriam-webster.com/dictionary/beverage. Ice is not a "beverage" by definition. Accordingly, Starbucks actually gives the customer much less beverage in the Cold Drinks they order and pay for—as little as about 14 fluid ounces in a Venti Cold Drink advertised as containing 24 fluid ounces, for example.

37.     As Starbucks has recognized in the past, a reasonable consumer does not wait to consume that drink; rather, the reasonable consumer purchases a Starbucks drink to consume it at or very near the time of purchase. In effect, a reasonable consumer does not wait for the ice in a Cold Drink to melt before consuming the Cold Drink. Effectively, the critical time for measuring

how many fluid ounces are present in a Cold Drink is at or very near the time of purchase. Further, a reasonable consumer expects the Cold Drink they ordered and paid for to contain the amount of that Cold Drink advertised on the menu when it is handed to them by a Starbucks employee—24 fluid ounces of iced coffee, for example, in a Venti Cold Drink.

38.     As Starbucks admits, a reasonable consumer purchases a Cold Drink to consume it while it is still cold, not after the beverage has warmed.

39.     As Starbucks further admits, by analogy, a reasonable consumer would not allow a scoop of hand-dipped ice cream to melt before consuming it.

40.     Starbucks' advertising practices are clearly meant to mislead consumers when combined with the standard practice of filling a Cold Drink cup with far less liquid than the cup can hold. If Starbucks truly intended to provide the amount of fluid ounces in its Cold Drinks that it advertises, there would be simple ways to do so. For example, Starbucks could sell its Venti Cold Drinks in cups that are large enough to allow room to both pour the advertised amount of Cold Drink in the cup and still have room to add ice.

41.     Starbucks is misleading customers who expect to receive the advertised amount of fluid ounces. For example, if a gallon of gas is advertised as costing three dollars, and a customer pays three dollars and pumps gas, that customer is expecting to receive a gallon of gas—not approximately half a gallon.

42.     Starbucks' Cold Drinks are underfilled to make more money and higher profits, to the detriment of consumers who are misled by Starbucks' intentionally misleading advertising practices.

43.     The amount of fluid ounces that Starbucks claims it is providing in Cold Drinks is clearly and prominently advertised, with the intent that Plaintiff and the Class would rely on these representations.

44.     The amount of fluid ounces in a Cold Drink is a material fact that a reasonable consumer would consider important. Had Plaintiff and the Class known that the Cold Drinks contained significantly less fluid ounces than represented by Starbucks, they would have not paid as much, if anything, for the Cold Drinks.

45.     Given the foregoing, Plaintiff and the Class were induced by Starbucks into purchasing the Cold Drinks at artificially inflated prices, which they would not have purchased or paid as much for the Cold Drinks, had they known the truth about the amount of fluid ounces of the ordered drink actually present in the Cold Drink.

46.     As a direct and proximate result of Starbucks' conduct, Plaintiff and the Class have suffered injury in fact and lost money or property. Starbucks, despite having knowledge that its representations are misleading to Plaintiff and the Class, continue to label, advertise, and sell its Cold Drinks in a deceptive and deceiving manner.

47.     Plaintiff and the Class are at risk of suffering further injury if the relief sought is not granted.

## CLASS ACTION ALLEGATIONS

48.     Plaintiff brings this action individually and as a class action on behalf of the following Class: All persons in the United States of America who purchased one or more of Defendant's Cold Drinks at any time between April 27, 2006 and the present (the "Class").

49.     Plaintiff also seeks to represent a subclass of all Class members who purchased a Cold Drink in Illinois at any time between April 27, 2013 and the present (the "Subclass").

50. Plaintiff reserves the right to redefine the Class prior to certification.

51. Excluded from the Class is any entity in which Defendant has a controlling interest, officers or directors of Starbucks, all government entities, and any justice or judicial officer presiding over this matter.

52. This action is brought and may be properly maintained as a class action pursuant to Fed. R. Civ. P. 23. This action satisfies the numerosity, typicality, adequacy, predominance, and superiority requirements of those provisions.

53. The Class is so numerous that the individual joinder of all of its members is impracticable. The exact number and identities of members of the Class is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery.

54. Common questions of law and fact exist as to all members of the Class, which predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary from Class member to Class member, and which may be determined without reference to the individual circumstances of any Class member include, but are not limited to, the following:

a. Whether Defendant's labeling, marketing, advertising, and promotion of its Cold Drinks was false and misleading;

b. Whether Defendant's labeling, marketing, advertising, and promotion of its Cold Drinks constituted fraud;

c. Whether Defendant's conduct constitutes breach of express warranty;

d. Whether Defendant's conduct constitutes breach of the implied warranty of merchantability;

e. Whether Defendant's conduct constitutes negligent misrepresentation;

f.      Whether Defendant's conduct resulted in unjust enrichment;

g.      Whether Defendant's conduct constitutes a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.*;

h.      Whether Defendant's conduct constitutes a violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2, *et seq.*;

i.      Whether Plaintiff and the Class are entitled to compensatory damages, and if so, the nature of such damages;

j.      Whether Plaintiff and the Class are entitled to restitutionary relief; and

k.      Whether Plaintiff and the Class are entitled to injunctive relief.

55.     Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and all members of the Class have been similarly affected by Starbucks' common course of conduct since they all relied on Starbucks' representations concerning the Cold Drinks and purchased the Cold Drinks based on those representations.

56.     Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel with substantial experience in handling complex class litigation. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the Class.

57.     A Class Action is superior to other available means for the fair and efficient adjudication of the claims of the Class and Subclass. Each individual Class member may lack the resources to undergo the burden and expense associated with individually prosecuting the complex, expensive, and extensive litigation necessary to establish Defendant's liability and obtain adequate compensation for the injuries sustained. Individualized litigation increases the expense and delay for all parties and multiplies the burden on the judicial system in handling the

complex legal and factual issues present in this case. Individualized litigation also presents the potential for inconsistent and contradictory judgments. Conversely, a class action presents far fewer practical difficulties and provides several benefits, including single and efficient adjudication. Class treatment of the issues present in this case will ensure that each claimant receives a fair and consistent adjudication.

<u>**COUNT I**</u>

**Breach of Express Warranty**

58.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this Complaint.

59.     Plaintiff brings this claim individually and on behalf of the proposed Class against Defendant.

60.     Starbucks, as the manufacturer, distributer, and/or seller expressly warranted that Starbucks' Cold Drinks contained "12 fl. oz." for a Tall, "16 fl. oz." for a Grande, "24 fl. oz." for a Venti, and "30 fl. oz." for a Trenta.

61.     In fact, Starbucks Cold Drinks are not fit for such a purpose because each of these express warranties are false. Starbucks Cold Drinks are underfilled. A Tall does not contain 12 fluid ounces, a Grande does not contain 16 fluid ounces, a Venti does not contain 24 fluid ounces, and a Trenta does not contain 30 fluid ounces of Cold Drink.

62.     As a direct and proximate result of Defendant's breach of express warranty, Plaintiff and the Class have been injured because they would not have purchased or paid as much for the Cold Drinks, had they known the truth about the amount of fluid ounces of the ordered drink actually present in the Cold Drink.

63.     Additionally, Starbucks Cold Drinks did not have the characteristics, ingredients, uses, benefits, or quantities as promised.

## COUNT II

### Breach of Implied Warranty of Merchantability

64.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this Complaint.

65.     Plaintiff brings this claim individually and on behalf of the proposed Class against Defendant.

66.     Starbucks, as the manufacturer, distributer, and/or seller expressly warranted that Starbucks' Cold Drinks contained "12 fl. oz." for a Tall, "16 fl. oz." for a Grande, "24 fl. oz." for a Venti, and "30 fl. oz." for a Trenta.

67.     In fact, Starbucks Cold Drinks are not fit for such a purpose because each of these express warranties are false. Starbucks Cold Drinks are underfilled. A Tall does not contain 12 fluid ounces, a Grande does not contain 16 fluid ounces, a Venti does not contain 24 fluid ounces, and a Trenta does not contain 30 fluid ounces of Cold Drink.

68.     Starbucks breached the implied warranty of merchantability in selling its Cold Drinks because the goods were not of fair or average quality within the description and the goods were not fit for their intended and ordinary purpose due to underfilling. As a result, Plaintiff and the Class did not receive the goods as impliedly warranted by Starbucks to be merchantable.

69.     Plaintiff and the Class purchased Starbucks Cold Drinks in reliance upon Defendant's representations, skill, and judgment and the implied warranties of fitness for that purpose.

70.     Starbucks Cold Drinks were not altered by Plaintiff or the Class.

71. Starbucks Cold Drinks were defective when they left the exclusive control of Defendant.

72. Defendant knew that Starbucks Cold Drinks would be purchased and used without additional testing by Plaintiff and the Class.

73. As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiff and the Class have been injured because they would not have purchased or paid as much for the Cold Drinks, had they known the truth about the amount of fluid ounces of the ordered drink actually present in the Cold Drink.

74. Additionally, Starbucks Cold Drinks did not have the characteristics, ingredients, uses, benefits, or quantities as promised.

## COUNT III

### Negligent Misrepresentation

75. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this Complaint.

76. Plaintiff brings this claim individually and on behalf of the proposed Class against Defendant.

77. Starbucks, as the manufacturer, distributer, and/or seller represented that Starbucks' Cold Drinks contained "12 fl. oz." for a Tall, "16 fl. oz." for a Grande, "24 fl. oz." for a Venti, and "30 fl. oz." for a Trenta.

78. In fact, Starbucks' representations about its Cold Drinks were false. Starbucks Cold Drinks are underfilled. A Tall does not contain 12 fluid ounces, a Grande does not contain 16 fluid ounces, a Venti does not contain 24 fluid ounces, and a Trenta does not contain 30 fluid ounces of Cold Drink.

79. At the time of its misrepresentations, Defendants knew or should have known that these representations were false or alternatively that it made them without knowledge of their truth or veracity.

80. Starbucks owed its customers, including Plaintiff and the Class, a duty to refrain from providing them with false and misleading information, specifically the amount of fluid ounces in its Cold Drinks.

81. Starbucks breached that duty, by misrepresenting the amount of fluid ounces in its Cold Drinks to Plaintiff and the Class and/or omitting material facts about the Cold Drinks.

82. These negligent misrepresentations, upon which Plaintiff and the Class reasonably and justifiably relied, were intended to induce them and actually did induce them to purchase Starbucks Cold Drinks.

83. Plaintiffs and the Class would not have purchased the Starbucks Cold Drinks, or would not have paid the price they did, if the true facts had been known.

84. Defendant's negligent misrepresentation caused damage to Plaintiff and the Class, who are entitled to damages and other legal and equitable relief.

<u>COUNT IV</u>

**Unjust Enrichment**

85. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this Complaint.

86. Plaintiff brings this claim individually and on behalf of the proposed Class against Defendant.

87.     Starbucks, as the manufacturer, distributer, and/or seller represented that Starbucks' Cold Drinks contained "12 fl. oz." for a Tall, "16 fl. oz." for a Grande, "24 fl. oz." for a Venti, and "30 fl. oz." for a Trenta.

88.     In fact, Starbucks' representations about its Cold Drinks were false. Starbucks Cold Drinks are underfilled. A Tall does not contain 12 fluid ounces, a Grande does not contain 16 fluid ounces, a Venti does not contain 24 fluid ounces, and a Trenta does not contain 30 fluid ounces of Cold Drink.

89.     Accordingly, Starbucks has been unjustly enriched in retaining revenues derived from Plaintiff the Class members' purchase of Starbucks Cold Drinks under these circumstances. Starbucks' misrepresentations caused Plaintiff and the Class harm and unjustly enriched Starbucks because Plaintiff and the Class would not have purchased Starbucks Cold Drinks or paid the price they did, had the true facts been known.

90.     Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and the Class as a result of these misrepresentations is unjust and inequitable, Defendant must pay restitution to Plaintiff and the Class.

## COUNT V

### Fraud

91.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this Complaint.

92.     Plaintiff brings this claim individually and on behalf of the proposed Class against Defendant.

93.     As detailed throughout Plaintiff's Complaint, Starbucks, as the manufacturer, distributer, and/or seller represented that Starbucks' Cold Drinks contained "12 fl. oz." for a Tall, "16 fl. oz." for a Grande, "24 fl. oz." for a Venti, and "30 fl. oz." for a Trenta.

94.     In fact, Starbucks' representations about its Cold Drinks were false. Starbucks Cold Drinks are underfilled. A Tall does not contain 12 fluid ounces, a Grande does not contain 16 fluid ounces, a Venti does not contain 24 fluid ounces, and a Trenta does not contain 30 fluid ounces of Cold Drink.

95.     Starbucks knew or should have known that it was underfilling its Cold Drinks because the standard practice was to fill a Cold Drink cup with substantially less Cold Drink liquid than advertised on Starbucks' menu.

96.     Defendant's misrepresentations were intended to induce and actually induced Plaintiff and the Class to purchase Starbucks Cold Drinks. In purchasing the Cold Drinks, Plaintiff and the Class reasonably and justifiably relied on Defendant's fraudulent representations.

97.     Plaintiff and the Class were damaged through their purchase of Starbucks Cold Drinks under these circumstances. Plaintiff and the Class would not have purchased Starbucks Cold Drinks or paid the price they did, had the true facts been known.

## COUNT VI

**Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act**

**815 ILCS 505/1,** *et seq.*

98.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this Complaint.

99.     Plaintiff brings this claim individually and on behalf of the proposed Subclass against Defendant.

100.    The Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et. seq.* makes it unlawful to employ

> "[u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact … in the conduct of any trade or commerce."

815 ILCS 505/2.

101.    As detailed throughout Plaintiff's Complaint, Starbucks, as the manufacturer, distributer, and/or seller represented that Starbucks' Cold Drinks contained "12 fl. oz." for a Tall, "16 fl. oz." for a Grande, "24 fl. oz." for a Venti, and "30 fl. oz." for a Trenta.

102.    In fact, Starbucks' representations about its Cold Drinks were false. Starbucks Cold Drinks are underfilled. A Tall does not contain 12 fluid ounces, a Grande does not contain 16 fluid ounces, a Venti does not contain 24 fluid ounces, and a Trenta does not contain 30 fluid ounces of Cold Drink.

103.    Defendant violated Section 505/2 of the Illinois Consumer Fraud and Deceptive Business Practices Act by misrepresenting the amount of fluid ounces of Cold Drink contained in its Cold Drinks. Starbucks made the misrepresentations about its Cold Drinks described throughout this Complaint with the intent that Plaintiff and the Subclass rely on them and purchase Starbucks Cold Drinks.

104.    Plaintiff and the Subclass were damaged by Starbucks' violation and their subsequent purchases of Starbucks Cold Drinks under these circumstances. Plaintiff and the

Subclass would not have purchased Starbucks Cold Drinks or paid the price they did, had the true facts been known.

## COUNT VII

### Violation of the Illinois Uniform Deceptive Trade Practices Act

### 815 ILCS 510/2, *et seq.*

105.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this Complaint.

106.     Plaintiff brings this claim individually and on behalf of the proposed Subclass against Defendant.

107.     The Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2, *et. seq.* makes it unlawful to "advertise[] goods or services with intent not to sell them as advertised." 815 ILCS 510/2(a)(9). It is also unlawful to "engage[] in any other conduct which similarly creates a likelihood of confusion or misunderstanding." *Id.* at (a)(12).

108.     As detailed throughout Plaintiff's Complaint, Starbucks, as the manufacturer, distributer, and/or seller represented that Starbucks' Cold Drinks contained "12 fl. oz." for a Tall, "16 fl. oz." for a Grande, "24 fl. oz." for a Venti, and "30 fl. oz." for a Trenta.

109.     In fact, Starbucks' representations about its Cold Drinks were false. Starbucks Cold Drinks are underfilled. A Tall does not contain 12 fluid ounces, a Grande does not contain 16 fluid ounces, a Venti does not contain 24 fluid ounces, and a Trenta does not contain 30 fluid ounces of Cold Drink.

110.     Defendant violated Section 510/2 of the Illinois Uniform Deceptive Trade Practices Act by misrepresenting the amount of fluid ounces of Cold Drink contained in its Cold Drinks. Starbucks' misrepresentations about its Cold Drinks described throughout this

Complaint crated a likelihood of confusion on the part of consumers regarding how many fluid ounces of Cold Drink they would receive.

111.     Plaintiff and the Subclass were damaged by Starbucks' violation and their subsequent purchases of Starbucks Cold Drinks under these circumstances. Plaintiff and the Subclass would not have purchased Starbucks Cold Drinks or paid the price they did, had the true facts been known.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Steven Galanis, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

a.   For an Order certifying the Class and the Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff Steven Galanis as the representative of the Class and Subclass and Plaintiff's attorneys as Class Counsel to represent members of the Class and Subclass;

b.   For an Order declaring that Defendant's conduct violates the statutes referenced herein;

c.   For an Order declaring that Defendant's conduct violates the common law provisions referenced herein;

d.   For an Order finding in favor of Plaintiff, the Class and the Subclass on all counts alleged herein;

e.   For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

f.   For pre-judgment interest on all amounts awarded to the full extent allowed by law;

g.   For injunctive relief as pleaded or as the Court may deem proper; and

h.  For an Order awarding Plaintiff, the Class and the Subclass their reasonable

    attorneys' fees and expenses to the full extent allowed by law.

## JURY DEMAND

Plaintiff Steven Galanis, individually and on behalf of all others similarly situated,

demands a trial by jury on all issues so triable.


Respectfully submitted,



By:    /s/ Steven A. Hart
       Attorney for Plaintiff,
       Steven Galanis




**HART MCLAUGHLIN & ELDRIDGE, LLC**
Steven A. Hart, Esq.
Robert J. McLaughlin, Esq.
Benjamin M. Shrader, Esq.
121 West Wacker Drive, Suite 1050
Chicago, Illinois 60601
312.955.0545
shart@hmelegal.com
rmclaughlin@hmelegal.com
bshrader@hmelegal.com