**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

STEVEN GALANIS, individually and on behalf
of all others similarly situated,

      Plaintiff,

      v.

STARBUCKS CORPORATION,

      Defendant.

No. 16 C 4705

Judge Thomas M. Durkin

**MEMORANDUM OPINION AND ORDER**

Steven Galanis alleges that Starbucks deceives its customers by misrepresenting the volume of its cold drinks because much of the volume is taken up by ice. Galanis alleges that this conduct constitutes: a breach of an express warranty (Count I); a breach of an implied warranty of merchantability (Count II); negligent misrepresentation (Count III); unjust enrichment (Count IV); fraud (Count V); a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Count VI); and, a violation of the Illinois Uniform Deceptive Trade Practices Act (Count VII). *See* R. 1. Starbucks has moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. R. 34. For the following reasons, Starbucks motion is granted.

**Legal Standard**

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *See, e.g., Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th

Cir. 2009). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Mann*, 707 F.3d at 877.

## Background

Starbucks sells iced coffee, iced tea, and iced blended specialty drinks at its many cafes across the country. R. 1 ¶ 1. Starbucks drinks are available in different sizes. Starbucks's menus describe the different sizes according to volume measured in "fluid ounces." *Id.* ¶¶ 18-19. On its website, Starbucks lists the drink container sizes it offers in a menu that is separate from the menu listing the drinks' contents. *Id.* ¶ 18. In its stores, Starbucks lists the drink container sizes across the top of its

menu, whereas the contents of the drinks are separately listed down the side of the menu. *Id.* ¶ 19.

Starbucks's cold drinks that contain ice are described on the menu as "iced." *Id.* Galanis referenced the menus on Starbucks's website in the complaint, so the Court independently viewed the website. As can be seen in the red-highlighted sections of the screen capture from the online menu included below, not only is the word "iced" part of the name of the cold drinks at issue in this case, the drinks are served "over ice" or "with ice," and the ingredients list includes ice. *See* www. starbucks.com/menu/drinks, for "Starbucks Refreshers Beverages," "Iced Coffee," "Iced Tea" (last visited Oct. 14, 2016, and confirmed for earlier dates prior to the filing of the complaint using The Wayback Machine Internet Archive, https://archive.org).

## Iced Coffee





Freshly brewed Starbucks® Iced Coffee Blend served chilled and lightly sweetened over ice.

| Grande 16oz ▾ | Sweetened ▾ |

**Nutrition Facts Per Serving (16 fl oz)**

| | | |
|---|---|---|
| Calories 80 | Calories from Fat 0 | |
| | | % Daily Value* |
| **Total Fat** 0g | | 0% |
| Saturated Fat 0g | | 0% |
| Trans Fat 0g | | |
| **Cholesterol** 0mg | | 0% |
| **Sodium** 10mg | | 0% |
| **Total Carbohydrate** 20g | | 7% |
| Dietary Fiber 0g | | 0% |
| Sugars 20g | | |
| **Protein** 0g | | |

Vitamin A  0%  •  Vitamin C  0%  •  Calcium  2%  •  Iron  0%

Caffeine 165mg**

*Percent Daily Values are based on a 2,000 calorie diet.

**Each caffeine value is an approximate value.

See ingredient and allergen information below.

Nutrition information is calculated based on our standardized recipes. Because our beverages are handcrafted and may be customized, exact information may vary.

See more about nutrition information

Currently Available

Find It At

Ingredients
Ice, Brewed Coffee, Classic Syrup [Sugar, Water, Natural Flavors, Potassium Sorbate, Citric Acid].

The cups in which Starbucks serves its "iced" drinks are made of clear plastic. The cups are also marked with black lines that delineate the amount of coffee, tea, or other beverage a Starbucks employee is supposed to pour into the cup. *Id.* ¶ 22. The employee then fills the rest of the cup with ice. *Id.* ¶¶ 22-23. Galanis alleges that "in essence, Starbucks is advertising the size of its . . . cups on its menu, rather than the amount of fluid a customer will receive when they purchase [an iced coffee, iced tea, or iced blended specialty drink]—and deceiving its customers in the process." *Id.* ¶ 35.

## Analysis

### I. Counts IV, V & VI: Unjust Enrichment, Common Law Fraud, and the Illinois Consumer Fraud and Deceptive Business Practices Act (the "Consumer Fraud Act")

Galanis claims that Starbucks's alleged misrepresentations constitute fraud and a violation of the Consumer Fraud Act. In relevant part, the Consumer Fraud Act provides:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

815 ILCS 505/2. "To prove a succeed in a private cause of action under the Consumer Fraud Act, a plaintiff must prove (1) a deceptive act or practice by the

4

defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception." *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 856 (Ill. 2005). "[A] statement is deceptive if it creates a likelihood of deception or has the capacity to deceive." *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001). In other words, the statements must "have misled a reasonable consumer," *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 673 (7th Cir. 2015), "in light of the totality of the information made available to the plaintiff." *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 884 (7th Cir. 2005); *see also Phillips v. DePaul Univ.*, 19 N.E.3d 1019, 1031 (Ill. App. Ct. 1st Dist. 2014) (courts are to "consider whether the act was deceptive as reasonably understood in light of all the information available to plaintiffs"). "Although [Consumer Fraud Act] claims often involve disputed questions of fact not suitable to a motion to dismiss, a court may dismiss the complaint if the challenged statement was not misleading as a matter of law." *Gubala v. CVS Pharmacy, Inc.*, 2015 WL 3777627, at *6 (N.D. Ill. June 16, 2015) (quoting *Ibarrola v. Kind, LLC*, 2015 WL 1188498, at *3 (N.D. Ill. Mar. 12, 2015)).

The heart of Galanis's claims is that if Starbucks advertises an "iced" drink as containing 24 fluid ounces, the drink "should have 24 ounces of fluid *plus ice*." R. 48 at 2 (emphasis in original). But as Starbucks points out, "no reasonable consumer ordering an iced tea expects to receive a cup of tea with a side of ice. Rather, a reasonable consumer ordering an *iced* tea would expect to receive the

advertised amount of the beverage, which is, as its name plainly states, comprised of both ice and tea." R. 49 at 2-3 (emphasis in original). And in this case it is not just the drinks' names that convey to the consumer that ice will be included, but the website menu directly states that the drinks are served "over ice" and include ice as an ingredient. As a federal district court in California concluded in a similar case, "If children have figured out that including ice in a cold beverage decreases the amount of liquid they will receive, the Court has no difficulty concluding that a reasonable consumer would not be deceived into thinking that when they order an iced tea, that the drink they receive will include both ice and tea and that for a given size cup, some portion of the drink will be ice rather than whatever liquid beverage the consumer ordered." *See Forouzesh v. Starbucks Corp.*, 2016 WL 4443203, at *3 (C.D. Cal. Aug. 19, 2016).

Similarly here, Galanis's claims ask the Court to interpret Starbucks's menus in an unreasonable fashion. A reasonable consumer would notice that the menus separately list the contents of the drinks and the size of the containers the drinks are served in. And because Starbucks uses the phrase "fluid ounces" in the section of the menus that describes container sizes, a reasonable consumer would understand that phrase to refer to volume, as opposed to a drink's contents. The reasonable consumer would also draw this conclusion from the mere fact that "fluid ounces" is a measurement of a drink's volume, not a description of a drink's contents. The common sense nature of this analysis is exemplified by imagining a

consumer who tried to order simply "24 fluid ounces." That request would obviously be met with the question, "Of what?"

Since the reasonable consumer would realize that the phrase "fluid ounces" refers to a drink's volume and a not its contents, the reasonable consumer would not think that the drink would contain only "fluid." Rather, if the consumer chooses an "iced" drink, the reasonable consumer knows that the container (whatever its volume) will be filled with both *solid* ice and a *fluid* beverage. The fact that the *volume* of the container the drink is served in is measured using "fluid ounces" would not cause the reasonable consumer to be surprised by the presence of ice in the drink's *contents*. Indeed, a reasonable consumer who purchases an "iced" drink, expects there to be ice in the drink, and would be upset if there wasn't. By contrast, Galanis's contention that the use of the phrase "24 fluid ounces" means that all 24 of those ounces must be "fluid" is simply not reasonable.

Customarily, drink sellers do not inform their customers regarding the specific volume measurements of the drink containers they offer. Instead, sellers create displays using examples of the available cups—which (until Starbucks entered our lives) were simply described as "small, medium, and large." Not only has Starbucks shunned these traditional descriptors in favor of more fanciful language (i.e., "short, tall, grande, venti," and—heart be still—"trenta"),[1] Starbucks has also decided to specifically identify the volume of each container. But none of this changes the fact that Starbucks's container size menu serves the same purpose

---

[1] "Venti" and "Trenta" apparently being registered trademarks!

as the customary method of displaying examples of each cup size (which you might still see at a stadium or movie theater or many other similar establishments). Despite the reference to "fluid ounces" on Starbucks's menus, a reasonable consumer still understands Starbucks's container size menu to convey information regarding the *volume* of the cups its drinks come in, as opposed to the *contents* of the various drinks. Therefore, including ice, which of course is not a fluid (as the parties "helpfully" point out, *see* R. 48 at 5; R. 49 at 9), in an iced drink does not make a menu listing the size of the drink in terms of "fluid ounces" a deceptive statement.[2]

## II. Counts I, II, III & VII: Breach of Express Warranty, Breach of Implied Warranty, Negligent Misrepresentation, and the Illinois Uniform Deceptive Trade Practices Act (the "IUDTPA")

All of the remaining counts in Galanis's complaint also require a misleading statement of some kind. *See Mydlach v. DaimlerChrysler Corp.*, 875 N.E.2d 1047, 1057 (Ill. 2007) (claim for breach of express warranty requires allegation of an "affirmation of fact or promise"); *S. Side Trust & Sav. Bank of Peoria v. Mitsubishi Heavy Indus., Ltd.*, 927 N.E.2d 179, 191 (Ill. App. Ct. 1st Dist. 2010) (claim for implied warranty requires allegation that the plaintiff "was relying upon seller's skills or judgment"); *Jane Doe-3 v. McLean Cty. Unit Dist. No. 5 Bd. of Dirs.*, 973 N.E.2d 880, 889 (Ill. 2012) (to state a claim for negligent misrepresentation a "plaintiff need only allege that the defendant was careless or negligent in

---

[2] This analysis also shows that Galanis has failed to allege that Starbucks made a false statement, so his common law fraud claim must be dismissed. Furthermore, the failure of Galanis's fraud claims also dooms his unjust enrichment claim. *See Bober*, 246 F.3d a 943.

ascertaining the truth of the statement, and that the defendant had a duty to convey accurate information to the plaintiff"); 815 ILCS 510/2(a)(9) (the IUDTPA makes it unlawful to "advertise[] goods or services with intent not to sell them as advertised"); 815 ILCS 510/2(a)(12) (the IUDTPA makes it unlawful to "engage[] in any other conduct which similarly creates a likelihood of confusion or misunderstanding"). The foregoing discussion demonstrates that Galanis has failed to allege a misleading statement. Thus, Counts I, II, III, and VII are dismissed.

## Conclusion

For the foregoing reasons, Starbucks's motion, R. 34, is granted, and Galanis's complaint is dismissed in its entirety without prejudice. His motion for class certification, R. 6, is also denied. Should Galanis believe he can cure the deficiencies the Court has described, he may file a motion for leave to file an amended complaint by November 14, 2016. The motion should attach a proposed amended complaint, and be supported by a brief of no more than five pages explaining why the proposed amendments would cure the deficiencies cited by the Court. Should Galanis file such a motion, Starbucks should not respond unless the Court so orders. If Galanis fails to file a motion for leave to amend by November 14, 2016, the dismissal will be with prejudice.

ENTERED:

_Thomas M Durkin_

Honorable Thomas M. Durkin
United States District Judge

Dated:  October 14, 2016

9